UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Michael Yurkovic,<br><br>             Plaintiff,<br><br>v.<br><br>New Jersey Higher Education Student Assistance Authority, *et al.*,<br><br>             Defendants. | Civil Action No.<br>3:16-cv-5339 (PGS) (LHG)<br><br>MEMORANDUM<br>AND ORDER |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on six motions: (1) a motion for summary judgment filed by Defendant Trans Union Corp. (ECF No. 62); (2) a motion for summary judgment filed by Defendant Russell P. Goldman (ECF No. 63); (3) a motion for summary judgment filed by Defendant New Jersey Higher Education Student Assistance Authority (HESAA) (ECF No. 65); (4) a cross-motion for summary judgment filed by Plaintiff Michael V. Yurkovich (ECF No. 77); (5) a motion for sanctions filed by Defendant Goldman (ECF No. 84); and (6) a motion to strike Plaintiff's statement of material facts and an affidavit of Joseph A. Bahgat in opposition to Defendants' summary judgment motions (ECF No. 80). For the reasons stated herein, Defendants are entitled to summary judgment except on Plaintiff's claim for declaratory judgment, on which HESAA concedes that Plaintiff is entitled to his day in court, and Plaintiff's FCRA negligence claim against HESAA.

## Background

Plaintiff is a member of the New Brunswick Police Department. (Amended Complaint, ECF No. 22, at ¶ 2). Plaintiff was married to Amber Pagliere from July 18, 2006, until their divorce on September 2, 2011. (Goldman's Statement of Undisputed Material Facts, ¶ 2; Declaration of Ann F. Kiernan (Kiernan Decl.), Ex. A, Deposition of Amber Pagliere (Pagliere Dep.) at 9:25 to 25; Kiernan Decl., Ex. D, Final Judgment of Divorce). During their relationship, Pagliere took out student loans from Defendant HESAA to finance her education at Rutgers University. (Pagliere Dep. at 11:5 to 20; Kiernan Decl., Ex. B, Deposition of Michael V. Yurkovic (Yurkovic Dep.) at 10:20 to 16:17). Plaintiff purportedly co-signed at least two of those loans. (Pagliere Dep. at 11:5 to 20; Yurkovic Dep. at 10:20 to 16:17). Those loans were for $5,500, signed on August 7, 2004, and for $7,250, signed on January 11, 2005, respectively.[1] (Pagliere Dep. at 11:5 to 20; Yurkovic Dep. at 10:20 to 16:17).

On May 1, 2007, just before graduating, Pagliere consolidated her loans with HESAA. (Pagliere Dep. at 12:7 to 13:3). Pagliere signed her husband's name on the document, but claims he gave her permission to do so. (Pagliere Dep. at 13:4 to 21). Plaintiff admits that he discussed the loan consolidation with Pagliere at the time; but denies giving her permission to sign his name. (Yurkovic Dep. at 25:7 to 21).

Pagliere eventually failed to make payments on the loan, and the loan defaulted. (Pagliere Dep. at 17:1 to 19). As a result, the HESAA servicing system forwarded the necessary information about the defaulting parties to the New Jersey Department of the Treasury. In turn, Yurkovic's

---

[1] Plaintiff and Pagliere were in a co-habitant relationship for "quite a few years before [they] got married." (Pagliere Dep. at 10:8).

2011 state income tax refund was reduced by the outstanding loan balance.[2] (Kiernan Decl., Ex. J, Deposition of Russell Archer[3] (Archer Dep.) at 33:7 to 35:13). HESAA also reported the defaulted consolidated loan to the major credit reporting bureaus. (Archer Dep. at 42:22 to 43:23). HESAA retained Goldman, a New Jersey attorney, to represent it in collection activities. (Kiernan Decl., Ex. C, Deposition of Russell P. Goldman (Goldman Dep.) at 15:16 to 18).

In March 2012, as set forth above, Plaintiff learned that HESAA had garnished his state income tax refund. Plaintiff's counsel contacted HESAA and was referred to Goldman. Goldman provided Plaintiff with a copy of the promissory note. By fax dated May 24, 2012, Plaintiff's then attorney contacted Goldman to notify him that Plaintiff claimed his May 1, 2007 signature on the consolidated loan had been forged. (Goldman Dep. 52:5 to 19). That day, Goldman forwarded HESAA's fraud/forgery packet to the attorney with instructions that Plaintiff should complete same. (Goldman Dep. 52:5 to 19, 61:19 to 62:17). Plaintiff's attorney acknowledged receipt of the packet on May 8, 2012 and indicated that he had forwarded the materials to Plaintiff. (Goldman Dep. at 52:20 to 21; Yurkovic 13). Plaintiff, however, failed to complete the packet. (Goldman Dep. 53:6 to 13). When asked about the packet during his deposition, Yurkovic stated he did not recall receiving an affidavit of forgery packet. (Yurkovich Dep. at 61:8 to 64:1).

Goldman initiated a state court action on behalf of HESAA against Pagliere and Yurkovic in July 2012. (Goldman Dep. at 77:11 to 18). That case, however, was dismissed or stayed because Pagliere filed for chapter 13 bankruptcy. (Goldman Dep. 80:13 to 18). Plaintiff claims that in 2014,

---

[2] More specifically, Russell Archer testified, "Once an account reaches a default status, we submit a tape to New Jersey Treasury for offsets. They then match it against theirs and send us [a report]." (Archer Dep. at 34:25-35:3).

[3] Although the record is unclear regarding Russell Archer's identity, his deposition, he appears to be a HESAA employee involved in credit reporting. (Archer Dep. at 37:21 to 23, 42:2 to 3).

3

HESAA falsely reported to three credit reporting agencies that Plaintiff had defaulted on the student loans. (Amended Complaint at ¶ 25).

On December 8, 2013, Plaintiff contacted Defendant Trans Union to request his consumer disclosure. (Declaration of Shameek Dennis[4] (Dennis Decl.), ECF No. 62-3, at ¶ 4). On March 14, 2014, Plaintiff's attorney filed a consumer dispute with Trans Union regarding the appearance of the HESAA loan on his credit file. (Dennis Decl. at ¶ 6; Yurkovic Dep. at 181:22 to 183:2). Trans Union claims this was its first notice of any potential inaccuracy relating to Plaintiff's account. (Dennis Decl. at ¶ 8). On March 19, 2014, Trans Union initiated a reinvestigation of the dispute by contacting HESAA. (Dennis Decl. at ¶ 10). On March 20, 2014, HESAA stated that a bankruptcy remark should be added to the account but that the account should continue to be reported. (Dennis Decl. at ¶ 12). Instead, on March 21, 2014, Trans Union permanently deleted the account from Plaintiff's Trans Union credit file. (Dennis Decl. at ¶ 13). On the same day, Trans Union sent Plaintiff notice that the account was deleted, but the notice was returned as undeliverable. (Dennis Decl. ¶¶ 16-17; Yurkovic Dep. at 183:13 to 184:11).

In 2015, Plaintiff applied for and was granted credit at Freehold Jeep. (Yurkovic Dep. at 50:23 to 53:1, 124:46 to 125:22). However, in his deposition, Plaintiff said the "the guy who was setting up the finances questioned [him] on [the loan]." (*Id.* at 51:19-24). He stated that he suffered some embarrassment from having to explain his negative credit score. (*Id.* at 52:14-17).

In the spring of 2016, Plaintiff claims he applied for a mortgage with Wells Fargo. (Yurkovic Dep. 54:22 to 59:8). However, he admitted that he did not complete the application because the process was too lengthy. (Yurkovic Dep. 55:14 to 59:8, 188:14 to 189:23). He received

---

[4] According to the certification, Shameek Dennis is "Representative II in the Litigation Support department of Trans Union, LLC." (Dennis Decl. at ¶ 1).

a mortgage from another unknown lender. (Yurkovic Dep. 55:14 to 59:8, 188:14 to 189:23). With regard to both loans, Plaintiff was unable to identify which consumer reporting agency provided a credit report and was not able to state that he received any worse mortgage terms because of information on his credit report. (Yurkovic Dep. 51:16 to 53:1, 52:6 to 53:1, 57:23 to 57:25, 59:6 to 13, 189:24 to 191:13). Plaintiff admitted there are no other credit applications that may have been affected by Trans Union's credit reporting. (Yurkovic Dep. 59:14 to 19).

Plaintiff then commenced this action in state court in July 2016. (*See* Notice of Removal, ECF No. 1, Ex. B, Verified Complaint). Defendant Experian removed the case to this Court on August 31, 2016. (Notice of Removal). Plaintiff filed an amended complaint on December 7, 2016, alleging five counts for: (1) declaratory judgment that Plaintiff did not sign the consolidation loan, cannot be held liable for repayment, and other relief (Count One); (2) willful violation of The Fair Credit Reporting Act; (3) negligent violation of The Fair Credit Reporting Act; (4) defamation; and (5) invasion of privacy. (Amended Complaint, ECF No. 22).

Thereafter, HESAA and Goldman each filed a motion to dismiss the amended complaint. (ECF No. 27, 28). On September 29, 2017, the Court partially granted both motions, dismissing counts four and five as against HESAA and dismissing counts one, two, and three as against Goldman. (ECF No. 40). On January 8, 2019, Plaintiff filed a notice of settlement and stipulation of dismissal as to Defendant Experian. (ECF No. 72). Therefore, the remaining claims are for declaratory judgment against HESAA and Trans Union (Count one); willful and negligent violation of the FCRA against HESAA and Trans Union (Counts two and three); defamation against Goldman and Trans Union (Count four); and invasion of privacy against Goldman (Count five).

HESAA concedes that Plaintiff "is entitled to his day in court" to try to prove that his signature was a forgery (count one – declaratory judgment). However, HESAA, Trans Union, and Goldman seek summary judgment on the remaining counts.

## **LEGAL STANDARD**

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to set forth specific facts showing that there is a genuine issue for trial"). Moreover, only disputes over facts that might

affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48. If a court determines, after drawing all inferences in favor of [the non-moving party] and making all credibility determinations in his favor "that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 Fed. App'x 222, 227 (3d Cir. 2007).

## LEGAL ANALYSIS

### HESAA's Answer

At the outset, the Court notes that HESAA never filed an answer to Plaintiff's amended complaint. Under Federal Rule of Civil Procedure 15(a)(3), "Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later." HESAA is directed to file an answer within fourteen days of the date of this opinion.

### Statute of Limitations

Trans Union contends Plaintiff's FCRA claims are barred by the applicable statute of limitations. The FCRA provides a two-year statute of limitations, providing that claims brought thereunder must be commenced "not later than the earlier of (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p. In the context of a federal statute of limitations, "'[d]iscovery' refers . . . to a plaintiff's *actual* discovery of certain facts." *Merck & Co. v. Reynolds*, 559 U.S. 633, 644-46 (2010). "[T]he discovery of the actual facts, and not the knowledge that those facts give rise to a cause of action, is what causes the statute of limitations to run." *Wirt v. Bon-Ton Stores, Inc.*, 134 F. Supp. 3d 852, 858 (M.D. Pa. 2015); *see also Mack v. Equable Ascent Fin., LLC*, 748 F.3d 663, 665-66 (5th Cir. 2014).

Plaintiff's claim accrued in March 2012, when he learned his state income tax return had been garnished and contacted HESAA. Plaintiff filed the complaint in state court on July 12, 2016. Therefore, more than two years had elapsed and Plaintiff's FCRA claim is barred.[5]

Damages

Both HESAA and Trans Union argue that Plaintiff's claims should be dismissed for failure to show any damages.[6] A consumer "must show that he suffered damages as a result of . . . inaccurate information." *Sarver v. Experian Information Solutions*, 390 F.3d 969, 971 (7th Cir. 2004). "A jury can award actual damages for negligent violations of the FCRA and both actual and punitive damages for willful violations." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 718 (3d Cir. 2010) (citing 15 U.S.C. §§ 1681o, 1681n. "[A] consumer may be awarded actual damages even if she is able to obtain credit after explanation of the inaccuracy." *Id.* at 719. In addition, "the FCRA allow[s] recovery for humiliation and embarrassment or mental distress even if the plaintiff has suffered no out-of-pocket losses." *Id.* "Time spent trying to resolve problems with the credit reporting agency may also be taken into account." *Id.*

Yurkovic has admitted that he was never denied new credit as a result of the account appearing on his credit report and was unsure whether he had suffered higher interest rates. (Yurkovic Dep. at 61:1 to 7). He points to his inability to secure a mortgage with Wells Fargo, stating, "They wouldn't give me anything until this was sorted out." (Yurkovic Dep. at 56:23 to 24). He admitted, however, that he was never actually denied a loan from Wells Fargo, but that he

---

[5] HESAA, however, did not raise any statute of limitations arguments. *See Charpentier v. Godsil*, 937 F.2d 859, 863 (3d Cir. 1991) (recognizing that a party's "[f]ailure to raise an affirmative defense by responsive pleading or appropriate motion generally results in the waiver of that defense" (footnotes omitted)).

[6] HESAA has joined in the damages-related arguments advanced by Trans Union (HESAA's Brief in Support of Summary Judgment, ECF No. 67, at 14-15).

stopped pursuing the application. (Yurkovic Dep. at 57:6 to 18). He was unable to state clearly that Wells Fargo ever denied him a loan. (Yurkovic Dep. at 57:6 to 25). Plaintiff was ultimately able to secure a mortgage from another company, which he did not identify. (Yurkovic Dep. at 59:1 to 5). Plaintiff was also unable to say with certainty whether the account affected the rate he got on his car loan. (Yurkovic Dep. at 59:9 to 13).

However, Plaintiff has stated that he suffered embarrassment of having to explain his credit score while applying for a car loan. (Yurkovic Dep. at 52:14-21). "Humiliation and embarrassment are cognizable injuries under the FCRA; and there is no requirement that a plaintiff provide corroborating evidence or medical testimony in support of an award of damages." *Dixon-Rollins v. Experian Info. Solutions, Inc.*, 753 F. Supp. 2d 452, 461 (E.D. Pa. 2010) (citing *Cortez*, 617 F.3d at 719-20). The plaintiff in *Dixon-Rollins* was permitted to present similar evidence of damages. *See id.* Therefore, Plaintiff is permitted to seek recovery based on his embarrassment.

<u>Negligent FCRA Violation</u>

Notwithstanding the statute of limitations barrier to this action, HESAA and Trans Union argue that the two FCRA claims against them should be dismissed because the evidence reveals no dispute that both Defendants took prompt and reasonable steps when Plaintiff notified them that he disputed his credit report. There are four elements of a cause of action for negligent violation of the FCRA: "(1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 708 (3d Cir. 2010) (quoting *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996)).

9

HESAA's brief analyzes this issue under 15 U.S.C. § 1681s-2. However, that section governs "[d]uties of information furnishers" after receiving notice of a dispute from "a consumer reporting agency." 15 U.S.C. §§ 1681s-2(b)(1), 1681i(a)(2). Plaintiff alleges that he contacted HESAA directly.

A separate set of procedures apply when furnishers[7] of information "receiv[e] a notice of dispute *from a consumer*." 15 U.S.C. § 1681s-2(a)(8)(E) (emphasis added). Those procedures require furnishers to:

> (i) conduct an investigation with respect to the disputed information;
>
> (ii) review all relevant information provided by the consumer with the notice;
>
> (iii) complete such person's investigation of the dispute and report the results of the investigation to the consumer before the expiration of the period under section 1681i(a)(1) of this title within which a consumer reporting agency would be required to complete its action if the consumer had elected to dispute the information under that section; and
>
> (iv) if the investigation finds that the information reported was inaccurate, promptly notify each consumer reporting agency to which the person furnished the inaccurate information of that determination and provide to the agency any correction to that information that is necessary to make the information provided by the person accurate.

15 U.S.C. § 1681s-2(8)(E). Furnishers need not follow those steps if "the person receiving a notice of a dispute from a consumer reasonably determines that the dispute is frivolous or irrelevant, including by reason of the failure of a consumer to provide sufficient information to investigate the disputed information." 15 U.S.C. § 1681s-2(8)(F). However, the furnisher is required to notify

---

[7] A debt collector is "called a 'furnisher' under the statute." *Walton v. EOS CCA*, 885 F.3d 1024, 1028 (7th Cir. 2018).

the consumer of a determination "that a dispute is frivolous or irrelevant . . . not later than 5 business days after making such determination." 15 U.S.C. § 1681s-2(8)(F)(ii).

It is undisputed that Defendant HESAA promptly initiated an investigation into Plaintiff's claims by forwarding him the forgery package to complete. Plaintiff's failure to complete the forgery packet likely subjected his dispute to a frivolous determination. However, there is no indication that HESAA notified Plaintiff that it determined the dispute to be frivolous because the forgery packet was not completed. Further, although HESAA now contends it has completed its investigation, which "has resulted in an impasse," the facts presented do not indicate whether HESAA notified Plaintiff of its conclusion. Therefore, HESAA's motion with regard to this count is denied.

With regard to Trans Union, the facts reveal no dispute that Trans Union, first, was reasonable when it relied upon HESAA's reporting to add the account to Plaintiff's file and, second, reasonably responded to Plaintiff's notification that he disputed the account. "When a consumer notifies a credit reporting agency directly of a dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file" within thirty days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(1)(A).

It is clear from the evidence presented that Trans Union acted reasonably after learning of the dispute. Plaintiff notified Trans Union of the dispute on March 14, 2014. Trans Union conducted its reinvestigation and permanently deleted the account from Plaintiff's file on March 19, 2015. Plaintiff's FCRA claims against Trans Union are therefore dismissed.

### Willful FCRA Violation

Defendants seek dismissal of Plaintiff's claims against them for willful violation of the FCRA (count two). "[W]illful violations of the FCRA are assessed for 'reckless disregard.'" *Cortez*, 617 F.3d at 721 (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 60 (2007)). "[A] company subject to the FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco Ins. Co. of Am. V. Burr*, 551 U.S. 47, 69 (2007). Plaintiff has provided the Court with no credible evidence that either HESAA or Trans Union acted willfully or with reckless disregard in its reinvestigation of Plaintiff's dispute. Defendants are therefore entitled to summary judgment on count two of the complaint.

### Preemption – Defamation

The FCRA provides that "no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency." 15 U.S.C. 1681h(e). An exception applies "to false information furnished with malice or willful intent to injure such consumer." *Id.*

Apart from Plaintiff's conclusory allegations set forth in his complaint, (*see* Amended Complaint at ¶¶ 70, 77, 83), no evidence has been provided to the Court indicating that any Defendant acted with malice or willful intent. Plaintiff's common law defamation claim is therefore preempted by the FCRA and is dismissed.

### Substantive Defamation Argument

Under New Jersey law, there are four elements of a cause of action for defamation: "(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher." *Leang v. Jersey City Bd. of Educ.*, 198 N.J. 557, 585 (2009) (quoting *DeAngelis v. Hill*, 180 N.J. 1, 13 (2004)).

Based on the undisputed evidence provided to the Court, it is clear that Goldman did not make any report to either Trans Union or Experian. It was HESAA alone that purportedly engaged in the reporting alleged. Goldman is therefore entitled to summary judgment on the defamation claim against him.

### Invasion of Privacy

Defendant Goldman argues he is also entitled to summary judgment on Plaintiff's invasion of privacy claims against him. The tort of invasion of privacy, or intrusion upon seclusion, "impose[s] civil liability on 'one who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns." *Soliman v. Kushner Cos., Inc.*, 433 N.J. Super. 153, 169 (N.J. Super. Ct. App. Div. 2013) (quoting *Hennessey v. Coastal Eagle Point Oil Co.*, 129 N.J. 81, 94 (1992)). The intrusion at issue must be "highly offensive to a reasonable person." *Hennessy*, 129 N.J. at 94-95. Efforts to collect a debt can rise to an intrusion upon seclusion tort only when Defendant's actions "amount to a course of hounding the plaintiff, . . . becom[ing] a substantial burden to his existence." *Rush v. Portfolio Recovery Assocs., LLC*, 977 F. Supp. 2d 414, 434 (D.N.J. 2013) (quoting Restatement (Second) of Torts § 652B, cmt. d (1977).

As is clear from the record, only HESAA was involved in Plaintiff's tax refund offset. Moreover, in an exchange during Plaintiff's deposition, he stated that Goldman never went to his house, knocked on his door, called him late at night, or posted public signs saying he was a deadbeat. (Yurkovich Dep. at 111:9 to 112:5). Goldman is therefore entitled to summary judgment on Plaintiff's intrusion upon seclusion claims.

## Sanctions Motion

Defendant Goldman argues for sanctions, claiming that Plaintiff's counsel "continued to advocate for Counts Four and Five after it was clear that there was neither a factual nor legal basis for either count." (Goldman's Motion for Sanctions, ECF No. 64-2, at 5). By letter dated August 28, 2018, counsel for Goldman notified counsel for Plaintiff that discovery had shown that his client's defamation and privacy claims were unwarranted and demanded that Plaintiff dismiss the remaining claims against Goldman.

Federal Rule of Civil Procedure 11 requires an attorney who signs a complaint to certify both that it is not interposed for improper purposes, such as delay or harassment, and that there is a reasonable basis in law and fact for the claim." *Napier v. Thirty or More Unidentified Federal Agents, Employees or Officers*, 855 F.2d 1080, 1090 (3d Cir. 1988). The rule "was designed to discourage the filing of frivolous, unsupported, or unreasonable claims." *Acevedo v. Monsignor Donovon High Sch.*, 2006 WL 2594877 (D.N.J. Sept. 11, 2006). "The legal standard is one of reasonableness under the circumstances." *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987). "The district court has substantial discretion to determine the nature and extent of a sanction." *Napier*, 855 F.2d at 1091. "[I]f evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention." Fed. R. Civ. P. 11 (1993 Advisory Committee Note).

Although Goldman's motion to dismiss is meritorious, the Court, in its discretion, finds that Plaintiff's counsel's conduct does not rise to a level of frivolous or unreasonable conduct that would warrant an award of sanctions. Accordingly, Goldman's motion for sanctions is denied.

Motion to Strike

Trans Union has filed a motion to strike two declarations completed by Joseph Bahgat, Plaintiff's counsel. Trans Union argues they constitute "declaration[s] of a witness who was not identified in Rule 26(a)(1) Disclosures" and "may not be used to admit new facts to oppose summary judgment." (Trans Union's Brief in Support of Motion to Strike, ECF No. 80-1, at 5); *see also Lujan v. Cabana Mgt.*, 284 F.R.D. 50, 72-73 (E.D.N.Y. 2012).

Inasmuch as the Court has already granted summary judgment in Trans Union's favor, the motion to strike is denied as moot.

## **ORDER**

This matter comes before the Court on six motions: (1) a motion for summary judgment filed by Defendant Trans Union Corp. (ECF No. 62); (2) a motion for summary judgment filed by Defendant Russell P. Goldman (ECF No. 63); (3) a motion for summary judgment filed by Defendant New Jersey Higher Education Student Assistance Authority (HESAA) (ECF No. 65); (4) a cross-motion for summary judgment filed by Plaintiff Michael V. Yurkovich (ECF No. 77); (5) a motion for sanctions filed by Defendant Goldman (ECF No. 84); and (6) a motion to strike Plaintiff's statement of material facts and affidavit in opposition to Defendants' summary judgment motions filed by Defendant Trans Union (ECF No. 80). The Court has considered the written submissions of the parties, the documents attached thereto, and held oral argument on the matter on February 28, 2019. Accordingly, for the reasons stated herein and for good cause shown,

IT IS on this __10__ day of July, 2019,

**ORDERED** that Trans Union's motion for summary judgment (ECF No. 62) is granted; and it is further

**ORDERED** that Goldman's motion for summary judgment (ECF No. 63) is granted; and it is further

**ORDERED** that HESAA's motion for summary judgment (ECF No. 65) is granted in part and denied in part as follows:

- Summary judgment is granted on Plaintiff's claim for willful violation of the FCRA against HESAA;

- Summary judgment is denied on Plaintiff's claim for negligent violation of the FCRA against HESAA and it is further

**ORDERED** that Plaintiff's cross-motion for summary judgment (ECF No. 77) is granted; and it is further

**ORDERED** that Goldman's motion for sanctions (ECF No. 84) is denied; and it is further

**ORDERED** that Trans Union's motion to strike Plaintiff's statement of undisputed material facts (ECF No. 80) is denied as moot.

_____
PETER G. SHERIDAN, U.S.D.J.